■ LUXUS AVIATION, LLC, et al., Appellants, v KERWIN MEDIA LLC et al., Respondents. [938 NYS2d 11]—

This action arises from the December 2007 purchase by plaintiff UMI of defendant Kerwin Media's membership interest in plaintiff Luxus, a New Jersey limited liability company which advertises goods and services to consumers through displays in

private jet terminals. Kerwin Media and UMI had each held a 50% interest in Luxus before UMI bought out its business partner for about $ 1.3 million, payable in installments.

Plaintiffs commenced this action in January 2011. The complaint's factual claims shall be accepted as true while evaluating defendants' CPLR 3211 motion (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]). It alleges that in March 2006, the individual defendants, who are Kerwin Media principals or former Luxus employees, had formed defendant company Roaring Thunder Media, and that shortly after the Luxus membership sale, Roaring Thunder Media began competing directly against Luxus by mimicking its business model and soliciting its customers and business partners, while exploiting confidential information which the individual defendants had obtained while they were employed by or affiliated with Lexus.

The complaint asserts a cause of action against Kerwin Media for breach of contract, on the ground that the company had violated the December 2007 sale agreement setting forth the terms of the transaction. The agreement is governed by New Jersey law pursuant to its choice of law provision. Plaintiffs do not claim that Kerwin Media violated an explicit term of the agreement, but instead contend that the company breached its implied covenant of good faith and fair dealing, as well as an implied restrictive covenant "to refrain from soliciting or otherwise interfering with the business relationships possessed by Luxus and purchased by UMI."

Plaintiffs also seek a judgment against Kerwin Media declaring that its alleged wrongdoing discharges plaintiffs from paying the unpaid balance of the contract purchase price (about $ 317,000). The complaint next asserts a claim against the individual defendants for tortious interference with the sale agreement, and claims against all defendants for misappropriation of trade secrets and tortious interference with Luxus's business relationships with third parties.

In lieu of answering, defendants moved for an order of dismissal under CPLR 3211 (a) (5) and (7), arguing both that plaintiffs' claims were barred by a release in an amendment to the sale agreement, dated February 27, 2009 and also governed by New Jersey law, and that the complaint fails to state a cause of action. The motion court granted the motion and dismissed this case on the ground that the causes of action in the complaint entirely fell within the scope of the release, under which plaintiffs and their affiliates waived "any and all claims . . . of any nature that [plaintiffs and their affiliates] may have

or ever has had to and including the date of this [amendment] against [defendants and their affiliates] arising out of alleged breaches of fiduciary duty, confidentiality and obligations relating to their affiliation with Luxus." In addition, the motion court declined to read non-compete and non-solicitation covenants into the sale agreement and amendment and pointed out that plaintiffs could have sought to include express covenants, "but opted not to do so even after they became aware of defendants' allegedly wrongful conduct."

We modify, but only as to the misappropriation of trade secrets claim for alleged conduct that occurred after the date of the release. The other claims are barred by the release and the terms of the sale agreement. The breach of contract, declaratory judgment, and tortious interference with the Luxus sale agreement allegations in the complaint fail to make out viable causes of action.

Turning first to the breach of contract claim, neither the sale agreement nor the amendment contains a non-compete or non-solicitation covenant, and implied covenants cannot be read into the contracts. The agreements were negotiated at arm's length and with the assistance of counsel, and while plaintiffs could have negotiated for and included restrictive covenants in the agreements, they chose not to even after they allegedly learned of Roaring Thunder Media's direct competition with Luxus. Under New Jersey law, a court cannot supply terms for a contract to which the parties have not agreed (*Schenck v HJI Assoc.*, 295 NJ Super 445, 450, 685 A2d 481, 484 [App Div 1996], *cert denied* 149 NJ 35, 692 A2d 48 [1997]).

Moreover, the implied covenant of good faith and fair dealing in the contracts cannot supply non-compete and non-solicitation provisions because the implied covenant can only be invoked to include terms that "the parties must have intended . . . because they are necessary to give business efficacy" (*New Jersey Bank v Palladino*, 77 NJ 33, 46, 389 A2d 454, 461 [1978]). The case upon which plaintiffs rely, *Graziano v Grant* (326 NJ Super 328, 741 A2d 156 [App Div 1999]), is inapposite. In *Graziano*, where the court found an implied non-compete covenant in a contract by which a dentist sold his practice, the agreement expressly contemplated the dentist's retirement after the sale. In contrast, the agreements in this case give no indication that Kerwin Media or the individual defendants were expected to withdraw from the advertising business or refrain from directly competing with Luxus.

Both the second cause of action for a declaratory judgment and the third cause of action for tortious interference with

contract presume that Kerwin Media breached the sale agreement. Since no underlying breach has been asserted, these ancillary claims cannot be maintained.

The claim for misappropriation of trade secrets survives for actions that postdate the release. To prevail in New Jersey upon a claim for misappropriation of trade secrets, the plaintiff must establish that a trade secret exists, the secret was disclosed to an employee in confidence, the employee breached that confidence by disclosing the secret, a competitor acquired the secret while knowing that it derived from the employee's breach of confidence, the competitor used the secret to the plaintiff's detriment, and the plaintiff had taken precautions to conceal the trade secret (*Rycoline Prods. Inc. v Walsh*, 334 NJ Super 62, 71, 756 A2d 1047, 1052 [App Div 2000], *cert denied* 165 NJ 678, 762 A2d 659 [2000]). Moreover, New Jersey recognizes that a defendant's use of a plaintiff's misappropriated trade secrets to gain a competitive advantage over it "is contrary to the notion of free competition that is fair" (*Lamorte Burns & Co. v Walters*, 167 NJ 285, 309, 770 A2d 1158, 1172 [2001]). The complaint, if viewed in the light most favorable to plaintiffs and not barred by the release, sufficiently alleges the elements of a claim for misappropriation of trade secrets. Concur—Saxe, J.P., Friedman, Renwick, DeGrasse and Freedman, JJ.